UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CR-21-FL-RN-1

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARLOS ALSTON | SUPPLEMENTAL BRIEFINF AND INCORPORATED MEMORANDUM OF LAW |

Defendant Carlos Alston, through undersigned counsel, respectfully provides this brief in response to the Court's request for Mr. Alston's position as to whether the existence of a rights-restoration provision and whether Congress's denial of funds to the Attorney General to implement the restoration provision impacts the questions before the court as to whether the Indictment violates Mr. Alston's Second Amendment right to keep and bear arms.

I.     BACKGROUND

    A. Procedural History

On January 24, 2023, Mr. Alston was charged in a two-count indictment with one count of being a person in receipt of a firearm while under indictment, in violation of 18 U.S.C. § 922(n), and one count of being a person in possession of a firearm while a drug user, in violation of 18 U.S.C. § 922(g)(3). [DE 11]. Arraignment is set for March 9, 2023.

    B. Factual Background

Mr. Alston was waiting in the drive-thru line of a restaurant located in Henderson, North Carolina, when police approached his car. [DE 1]. Mr. Alston anticipates that the government will argue Mr. Alston brandished a weapon at the approaching police officer after the officer gave verbal commands for Mr. Alston to show his hands and notified him of

outstanding warrants. [DE 1]. The officer then shot Mr. Alston once, striking him in the lower body. [DE 1]. After a foot chase, Mr. Alston collapsed from his injuries and was taken into custody. [DE 1]. Police recovered a Smith & Wesson, SD9VE 9mm pistol near Mr. Alston's flight path, and they discovered marijuana in his car. Mr. Alston has a prior criminal conviction related to marijuana. [DE 1]. At the time of the shooting, Mr. Alston did not have any felony convictions.

## II. LAW REGARDING FEDERAL RESTORATION OF RIGHTS

### A. *No application for restoration can be made in this case.*

Under federal law, a person who is convicted of a felony is prohibited from possessing firearms. *See* § 922(g)(1). The Secretary [of the Treasury] was authorized to grant relief from that prohibition if it is established to his satisfaction that certain preconditions are met. *See* § 925(c). An applicant may seek judicial review from a "United States district court" if his application "is denied by the Secretary." *Id. See United States v. Bean,* 537 U.S. 71, 74, 123 S.Ct. 584, 586 (2002). However, there is no practical process for restoration as the Bureau of Alcohol Tobacco and Firearms (ATF) has been barred from acting on this due to an appropriations ban that has been in place since 1992. Accordingly, the ATF is prohibited to act on § 925(c) applications. Specifically, the Secretary is barred from using "funds appropriated herein ... to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. [§ ]925(c)." Treasury, Postal Service, and General Government Appropriations Act, Pub. L. 102-393, 106 Stat. 1732.

As there is a bar which effectively prevents Mr. Alston from applying for restoration of rights under any circumstances. However, under the *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111

(2022) decisions, Mr. Alston should not have to apply for restoration as the Second Amendment codified a pre-existing individual right to possess and use firearms for lawful purposes like self-defense. *Heller*, 554 U.S. 570, 592, 624 (2008). Under *Bruen*, the government cannot meet its burden to identify a "relevantly similar" historical tradition of firearm regulation that supports disarming individuals who have been merely indicted. Accordingly, Mr. Alston should not be required to ask for restoration of his rights.

### B. The remote chance of "restoration" does not cure the unconstitutionality of the statute.

The fact that Congress disabled the program means 925(c) is a dead letter. There is, in effect, no possibility of getting firearms rights restored under any circumstances under the current legislative regime. Further, the remote possibility that 925(c) might someday be revived AND that someone might prevail under it cannot cure the unconstitutionality of the prohibitions.

The fact that, in theory, someone could regain his arms right through a discretionary, long-shot process just doesn't mean that his right isn't being infringed right now. *Bruen* makes clear that the right to keep and bear arms can be infringed by deprivations short of total disarmament. The New York statute's proper-cause requirement stuck down by the Supreme Court in *Bruen* was discretionary and difficult to satisfy in the same way that 925(c) is. Once again, a very speculative avenue for relief does not meaningfully prevent deprivation of a constitutional right.

Further, consistent with *Bruen's* focus on history, there is no evidence showing that any founding-era examples indicating that people who were entitled to bear arms could be disarmed if the government left open a very small, highly discretionary avenue for those people to regain their rights. As the holding of Bruen clearly articulates, the government can't take away a person's Second Amendment rights, contingent on their proving that they meet some highly subjective and demanding criteria, unless the government can show there was evidence of such a scheme in the

founding era. Once again, the government cannot meet its burden to identify a "relevantly similar" historical tradition of firearm regulation that supports disarming individuals who have been merely indicted. Accordingly, Mr. Alston does not have to ask for restoration of his rights to lawfully possess firearms.

### III. CONCLUSION

The government has failed to demonstrate that § 922(g)(3) and § 922(n) are supportable by any historic tradition of firearm regulation in the United States, rendering them unconstitutional under *Bruen* and the Second Amendment. Mr. Alston continues to argue that this Court should dismiss both counts of the indictment against Mr. Alston.

Respectfully requested this 25th day of May, 2023.

G. ALAN DUBOIS
Federal Public Defender

/s/ Edward D. Gray
EDWARD D. GRAY
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
E-mail: Edward_Gray@fd.org
N.C. State Bar No. 37539
LR 57.1 Counsel Appointed

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

Sarah E Nokes
Assistant United States Attorney
United States Attorney's Office
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

by electronically filing the foregoing with the Clerk of Court on May 25, 2023, using the

CM/ECF system which will send notification of such filing to the above.

        This the 25th day of May, 2023.

                                      G. ALAN DUBOIS
                                      Federal Public Defender

                                      /s/ Edward D. Gray
                                      EDWARD D. GRAY
                                      Assistant Federal Public Defender
                                      Attorney for Defendant
                                      Office of the Federal Public Defender
                                      150 Fayetteville Street, Suite 450
                                      Raleigh, North Carolina 27601
                                      Telephone: 919-856-4236
                                      E-mail: Edward_Gray@fd.org
                                      N.C. State Bar No. 37539
                                      LR 57.1 Counsel Appointed