IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CR-21-FL-RN-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | GOVERNMENT'S SUPPLEMENTAL |
| v. ) | BRIEF REGARDING APPLICABILITY |
| ) | OF 18 U.S.C. § 925(c) TO ALSTON'S |
| CARLOS ALSTON ) | MOTION TO DISMISS |

Defendant Carlos Alston moved to dismiss the Indictment pending against him, arguing that the charged statutes, 18 U.S.C. §§ 922(g)(3) and (n), are unconstitutional in the wake of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). DE 17. The government responded, arguing that the statutes are constitutional. DE 20. On May 12, 2023, the Court ordered the parties to submit supplemental briefing regarding the effect of the rights-restoration provision of 18 U.S.C. § 925(c) on the parties' arguments. DE 22. As further discussed below, 18 U.S.C. § 925(c) has no effect on the issues now before the Court.

I.  Background

Since 1986, federal law has included a rights-restoration provision at 18 U.S.C. § 925(c)[1] which ostensibly allows individuals who are federally prohibited from

---

1 Congress promulgated an earlier version of the rights restoration statute in 1965. Ryan Laurence Nelson, *Rearming Felons: Federal Jurisdiction Under 18 U.S.C. § 925(c)*, 2001 Univ. of Chi. L. Forum 554, *available at* https://perma.cc/EM73-HWK5. While intended to provide relief to corporations which had incurred prohibitions

1

possessing, shipping, transporting or receiving firearms to petition the Secretary of the Treasury (and later, the Attorney General) for restoration of their firearms privileges. *See* Pub. L. No. 99-308, 100 Stat. 449 (1986); 18 U.S.C. § 925(c). The statute provides, in pertinent part:

> A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Attorney General for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms, and the Attorney General may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.

18 U.S.C. § 925(c). The statute further allows for unsuccessful applicants to petition the district court in the district in which they reside for review of the denial of their restoration of firearms rights. 18 U.S.C. § 925(c). The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was tasked with reviewing rights restoration applications and conducting "a broad-based field investigation of the convicted applicant's record and reputation before ruling on the application" according to detailed regulations. *United States v. McGill*, 74 F.3d 64, 66 (5th Cir. 1996).

In 1992, Congress prohibited executive branch agencies from using federal funding to investigate or act upon petitions for relief under 18 U.S.C. § 925(c). *United States v. Bean,* 537 U.S. 71, 74-75 (2002) (citing Treasury, Postal Service and General

---

against participation in the firearms trade, individual persons also took advantage of the program. *Id*.

Government Appropriations Act, 1993, Pub. L. 102-393, 106 Stat. 1732). Congress explained that the task of reviewing, investigating and deciding upon rights restoration applications was "a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made" and that the time spent reviewing and investigating the applications would be better spent in "crack[ing] down on violent crime." S. Rep. No. 353, 102nd Cong. 2d Sess. 77 (1992). Congress has continued to withhold funding for review of rights restoration applications. *See* Consolidated Appropriations Act, 2022, Pub. L. No. 117–103, 136 Stat. 49.

The withdrawal (and continued withholding) of funding effectively eliminated the ability of individuals to obtain relief under 18 U.S.C. § 925(c), because the ATF cannot issue a final decision on any individual's restoration application and the district courts lack jurisdiction to consider an individual's petition without such a final decision. *Bean*, 537 U.S. at 75-78; *Saccacio v. Bureau of Alcohol, Tobacco & Firearms*, 211 F.3d 102, 104 (4th Cir. 2000). This outcome aligned with Congressional intent, as Congress intended its withdrawal of funds "to suspend the relief provided by [18 U.S.C.] § 925(c)." *McGill*, 74 F.3d at 67. Since 1993 then, 18 U.S.C. § 925(c) "has been rendered inoperative." *Logan v. United States*, 552 U.S. 23, 28 n.1 (2007).

II. **Argument**

Neither the existence of 18 U.S.C. §925(c)'s rights-restoration provision nor Congress's denial of funds to implement that provision impacts the analysis in this

3

case for two reasons. First, Section 925(c)'s rights-restoration provision would be relevant, if operational, to the propriety of as-applied challenges to federal firearms statutes, and Defendant makes only a facial challenge to Sections 922(g)(3) and (n). Second, Section 925(c)'s rights-restoration process is not constitutionally required, and Defendant could not satisfy its requirements even if it were operational.

### A. Section 925(c)'s operation may be relevant to an as-applied challenge, but Defendant makes only facial challenges to the constitutionality of 18 U.S.C. §§ 922(g)(3) and (n)

The unavailability of judicial review under 18 U.S.C. § 925(c) does not prevent a criminal defendant from raising a Second Amendment challenge to a charge of illegal possession of a firearm under 18 U.S.C. § 922. If the relief process under Section 925(c) were operational, it would significantly weaken or perhaps entirely foreclose a defendant's claim that a federal ban on firearm possession was unconstitutional as applied to him. *See Lewis v. United States*, 445 U.S. 55, 64 (1980) (stating that "Congress clearly intended that the defendant clear his status *before* obtaining a firearm" and pointing to § 925(c) as a possible means of doing so). But in the years following Congress's withdrawal of funds from the program, courts, including the Fourth Circuit, have entertained as-applied challenges to various provisions of 18 U.S.C. § 922. *See, e.g., Harley v. Wilkinson*, 988 F.3d 766 (4th Cir. 2021); *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019); *Binderup v. Att'y Gen. United States of Am.*, 836 F.3d 336 (3d Cir. 2016).

4

Some judges have expressed the view that such as-applied challenges are improper given Congress's decision to de-fund Section 925(c). *See Harley*, 988 F.3d 766, 774 (4th Cir. 2021) (Wynn, J., concurring) (observing that the defendant "seeks to avoid the limitations of § 925(c) by pursuing an as-applied challenge directly in federal court" and expressing the view that "relief, if any, lies in obtaining a pardon in Virginia or receiving relief from the Attorney General" under Section 925(c)); *Binderup,* 836 F.3d at 403 (Fuentes, J., dissenting) ("Notwithstanding Congress's experience with § 925(c), [petitioners] seem to believe that by shoehorning their complaints about § 922(g)(1)'s scope into the rubric of 'as-applied challenges,' they necessarily force us to assess their individual characteristics rather than rely on Congress's categorical rule."). But the Fourth Circuit has routinely considered as-applied Second Amendment challenges in the context of federal firearms prosecutions, despite the existence of § 925(c). *See, e.g., Harley*, 988 F.3d at 768-71; *United States v. Collins*, 982 F.3d 236, 243 (4th Cir. 2020); *United States v. Hosford*, 843 F.3d 161, 167-70 (4th Cir. 2016). And nothing in *Bruen* indicates that such as-applied challenges are impermissible. *See Range v. Attorney General*, 53 F.4th 262, 270 n.9 (3d Cir. 2022) ("[T]here is still room for 'as-applied' challenges even after *Bruen*."), vacated on rehearing *en banc*, 56 F.4th 992 (2023); *but see United States v. Wagoner*, No. 4:20-CR-00018, 2022 WL 17418000, at *4 (W.D. Va. Dec. 5, 2022) (calling into question whether as-applied challenges may be made post-*Bruen* because the only question for the court is "whether the challenged law is facially consistent

5

with the Nation's historical tradition of firearm regulation.").

In any event, Defendant raises a facial challenge that would not be affected even if Section 925(c) were operational. Defendant's Motion does not explicitly claim to be either a facial challenge or an as-applied challenge. But because Defendant neither included "a developed factual record" nor challenged "the application of a statute to a *specific person*," his challenge is not an as-applied challenge. *Educ. Media Co. at Va. Tech v. Insley*, 731 F.3d 291, 298 n.5 (4th Cir. 2013) (emphasis added) (*quoting Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (*en banc*)). Defendant's Motion does not argue specific facts about his own characteristics, history or circumstances that would lead the Court to conclude that the prohibitions in 18 U.S.C. §§ 922(g)(3) and (n) are unconstitutional as they have been *specifically applied to him*. Rather, Defendant makes a broader argument: that 18 U.S.C. §§ 922(g)(3) and (n) are unconstitutional in any application, because they are not consistent with the nation's history and tradition of firearms regulation. This is a quintessential facial challenge.

Section 925(c) is a provision which, when in use, was focused solely on the specific characteristics of the petitioner. 18 U.S.C. § 925(c) (directing inquiry into "the applicant's record and reputation."). When funding existed for such individual inquiries, ATF considered information about each specific petitioner, including, *inter alia*, statements from personal references, employment history, medical history, military service and the applicant's criminal record, in order to make necessary

6

findings about whether that particular petitioner would be a danger to the public. 27 C.F.R. § 478.144(c). The Court has no such information about the defendant, and thus Defendant's Motion is not analogous to a petition under § 925(c). Because Defendant has not made the kind of showing contemplated by § 925(c) or the types of as-applied challenges considered in *Harley, Kanter* or *Binderup*, the existence and inoperability of § 925(c) are not relevant to his Motion.

### B. Section 925(c)'s rights-restoration provision is not constitutionally required, and Defendant could not satisfy its requirements in any event.

The existence of Section 925(c) does not prevent Defendant from bringing an as-applied challenges to Sections 922(g)(3) and (n). But neither does Section 925(c)'s inoperability help Defendant prevail on those challenges. Section 925(c)'s rights-restoration scheme is not constitutionally required. The government is not aware of any decision holding that defendants must be able to seek relief from the prohibitions in Section 922, nor any decision holding that Congress's failure to fund Section 925(c) creates constitutional concerns. Defendant has not alleged—and cannot show—that a funded rights-restoration process is necessary to a constitutional firearms regulation scheme.

This is particularly true in the context of the temporary prohibitions on firearm possession and receipt that Defendant challenges. Several of Section 922's prohibitions are permanent. *See, e.g.,* 18 U.S.C. §§ 922(g)(1) and (g)(9) (permanently depriving felons and domestic violence misdemeanants from firearm possession). The

7

*Heller* and *Bruen* courts cited at least some permanent disposition statutes as constitutionally sound. *See, e.g., District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons...."); *Bruen*, 142 S.Ct. at 2162 (Kavanaugh, J., concurring) (same). But the permanent nature of these prohibitions has been the crux of many as-applied challenges in the wake of Section 925(c)'s defunding. *See, e.g., Kanter*, 919 F.3d at 468-69 (Barret, J., dissenting); *Harley*, 988 F.3d at 771.

However, the statutory provisions currently before the Court for constitutional review are *not* permanent in nature. In order to receive relief from the prohibition on firearm possession in Section 922(g)(3), an individual need only cease use of illegal controlled substances. A person who has not engaged in illegal controlled substance use with recency and regularity is not subject to the prohibition in 18 U.S.C. § 922(g)(3). *See United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002). Similarly, a person who is subject to the prohibition on his receipt of firearms under Section 922(n) because he is under felony indictment will be relieved of the restriction if he is found not guilty of his crime[s] or the indictment is dismissed. Even if he is found guilty of the felony offense[s] for which he was under indictment, the prohibition in Section 922(n) no longer applies, though he would face prohibition under 18 U.S.C. § 922(g)(1). In short, both challenged statutes impose only temporary burdens on an individual's rights to receive or possess firearms and such person would not need a

8

formal rights-restoration scheme in order to be relieved of either statute's prohibitions.

Moreover, even if Section 925(c) were operational, Defendant could not meet that provision's requirements. Defendant, as a daily user of marijuana and person under indictment for a serious, violent felony is not someone who could show that he would "not be likely to act in a manner dangerous to public safety" and whose rearmament "would not be contrary to the public interest." 18 U.S.C. § 925(c); *see, e.g., Kanter,* 919 F.3d at 440 (considering and denying an as-applied challenge from a plaintiff who had been convicted of a non-violent felony, completed his sentence and paid his monetary penalties). Defendant showed that he was, in fact, dangerous when he brandished a loaded handgun at an officer who approached him to effectuate a lawful arrest. *See* DE 15 (finding, by clear and convincing evidence, that no release condition which could be imposed upon the defendant could reasonably assure the safety of any person or the community). Because Defendant could not hope to satisfy the requirements of 18 U.S.C. § 925(c) (or an as-applied challenge in which the court applied similar criteria), that section's inoperability has no effect on his Motion.

### III. Conclusion

The existence and inoperability of Section 925(c) has no effect on the issues before the court. Sections 922(g)(3) and 922(n) are constitutional both facially and

9

as applied to Defendant, and Defendant's motion to dismiss should be denied.

Respectfully submitted this 26th day of May, 2023.

                                          MICHAEL F. EASLEY, JR.
                                        United States Attorney

                                        BY:   /s/ Sarah E. Nokes
                                        SARAH E. NOKES
                                        Assistant United States Attorney
                                        Criminal Division
                                        150 Fayetteville Street, Suite 2100
                                        Raleigh, North Carolina 27601
                                        Telephone:  (919) 856-4054
                                        Facsimile:   (919) 856-4487
                                        E-mail:   sarah.nokes@usdoj.gov
                                        VA Bar No. 82472

## CERTIFICATE OF SERVICE

This is to certify that I have this 26th day of May, 2023, served a copy of the foregoing response upon the defendant in this action by CM/ECF to:

Edward D. Gray
Attorney for Defendant

/s/ Sarah E. Nokes
Sarah E. Nokes
Assistant United States Attorney
Criminal Division