UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CR-21-FL-RN-1

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARLOS ALSTON | OBJECTIONS TO MAGISTTRATE JUDGE MEMORANDUM AND RECCOMENDATIONSW |

Defendant Carlos Alston, through undersigned counsel, respectfully provides the following concurrences and objections to the Magistrate Judge Memorandum and Recommendation.

I. BACKGROUND

A. Procedural History

On January 24, 2023, Mr. Alston was charged in a two-count indictment with one count of being a person in receipt of a firearm while under indictment, in violation of 18 U.S.C. § 922(n), and one count of being a person in possession of a firearm while a drug user, in violation of 18 U.S.C. § 922(g)(3). [DE 11]. On July 18, 2023, United States Magistrate Judge Robert Numbers issued a Memorandum and Recommendation on the issues presented in Defendant's Motion to Dismiss the Indictment based upon Second Amendment of the U.S. Constitution grounds. [DE 27].

Mr. Alston concurs with the Magistrate Judge's recommendation with regard to the finding that § 922(g)(3) is unconstitutional in light of the Supreme Court's ruling in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Mr. Alston objects to the conclusion that § 922(n) is a regulation that is consistent with the nation's historical tradition of firearms regulation.

1

### B. Factual Background

Mr. Alston was waiting in the drive-thru line of a restaurant located in Henderson, North Carolina, when police approached his car. [DE 1]. Mr. Alston anticipates that the government will argue Mr. Alston brandished a weapon at the approaching police officer after the officer gave verbal commands for Mr. Alston to show his hands and notified him of outstanding warrants. [DE 1]. The officer then shot Mr. Alston once, striking him in the lower body. [DE 1]. After a foot chase, Mr. Alston collapsed from his injuries and was taken into custody. [DE 1]. Police recovered a Smith & Wesson, SD9VE 9mm pistol near Mr. Alston's flight path, and they discovered marijuana in his car. Mr. Alston has a prior criminal conviction related to marijuana. [DE 1]. At the time of the shooting, Mr. Alston did not have any felony convictions.

### C. Standard of Review

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). *See* Fed. R. Crim. P. 59(b)(1). A party may file written objections to magistrate judge's memorandum and recommendation within fourteen days of being served with a copy of the memorandum and recommendation. 28 U.S.C § 636(b)(1). " 'Any written objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.' " *Morgan v. N.C. Dep't of Health and Human Servs.*, 421 F. Supp. 2d 890, 893 (W.D.N.C. 2006) (emphasis in original) (*quoting Thomas v. Westinghouse Savannah River Co.*, 21 F. Supp. 2d 551, 560 (D.S.C. 1997)); s*ee also Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) ("[P]arties filing objections must specifically identify those findings objected to.") (quotation omitted).

## II. RESTRICTIONS ON THE RIGHT TO BEAR ARMS IN LIGHT OF *BRUEN*

*A. Mr. Alston concurs with the Court's finding that § 922(g)(3) is unconstitutional.*

The United States argues that the Second Amendment does not apply to Alston because—as an unlawful drug user under indictment—he is not a member of "the people" who enjoy the Amendment's protections. [D.E. 20 at 6–10]. The Memorandum and Recommendation (M&R) properly reasoned that "[t]o agree with the United States, this court would need to understand "the people" in the Second Amendment context differently than it interprets that phrase in every other section of the Constitution; however, the Supreme Court has rejected this approach." [*See* D.E. 27 at 12].

The theory pursued by the government in this case has failed to recognize that *Bruen* has changed the legal landscape in which all restrictions of Second Amendment rights must be analyzed. The Supreme Court's recent opinion in *Bruen* disavowed the lower courts' framework, holding "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Bruen*, 142 S. Ct. at 2127. In its place, the Court adopted a "text-and-history standard" more consistent with *Heller's* methodology. *Id.* at 2138. Once again, it is the "means-ends" justification that the Government is attempting to posit as the basis to deprive Mr. Alston from his constitutional rights. *See* DE 40, at 3-4.

The analysis within the M&R as to the constitutionality of § 922(g)(3) is not an outlier; it is consistent with the holding of *Bruen*. Under *Bruen*, the government cannot meet its burden to identify a "relevantly similar" historical tradition of firearm regulation that supports disarming individuals who are alleged to be drug users as there is no clear set of pre-enactment positive-law statutes concerning narcotic use and firearms. Last week, the United States Court of Appeals for the Fifth Circuit reached this same conclusion in *United States v. Daniels*, No. 22-60596, 2023

3

WL 5091317 (5th Cir. Aug. 9, 2023). In *Daniels*, the Fifth Circuit similarly held that § 922(g)(3) was inconsistent with *Bruen*. First the Daniels court found that the Second Amendment applied to persons like Daniels, admitted drug users. *Id* at *2. Second the question was that there was not a similarly analogous statute that existed prior to the Second Amendment. *Id* at *14. The reasoning articulated within the M&R is identical to the reasoning of the Daniels court; as such, the M&R is not an outlier opinion without basis. Accordingly, § 922(g)(3) fails the analysis of *Bruen*.

### B. Mr. Alston objects to the court's finding that § 922(n) is a permissible restriction of rights analogous to pre-trial detention.

The Supreme Court could not have been clearer when it stated that "firearms restrictions are presumptively unlawful unless the government can demonstrate that the regulation is consistent with the Nation's historical tradition of firearms regulations." *Bruen,* 142 S. Ct. 2111, 2126 (2022). As such, Mr. Alston objects to the M&R with regard to the finding that § 922(n) "analogous enough to pass constitutional muster." [D.E . 27 at 20]. Further, Mr. Alston objects to the finding that § 922(n) is a permissible limitation on the right to self-defense in a manner similar to pre-trial detention. *Id.* at 19. Whether it is "analogous enough" is not the test as articulated by the court in *Bruen*. Further, the court in *Bruen* as clearly stated that the "Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." *Bruen*, 142 S. Ct. at 2111, 2156. Accordingly, the M&R analogizes a constitutional freedom of self-defense to a switchboard of rights that can be turned on and off under the allegation of wrongdoing.

When the M&R asserts that the limitation of the right to bear arms is analogous to the right to liberty, it is saying that the presence of an indictment's probable cause determination is analogous to the 18 U.S.C. § 3142 determination of detention. This analogy is not consistent with

the holding of *Bruen* and allows for the deprivation of a constitutional right without any safeguards other than a probable cause determination. As detailed within the M&R, a probable cause determination is all that is needed to acquire an indictment. [D.E. 27 at 19] However, to take a person's liberty more than probable cause is required.

Section 18 U.S.C. § 3142(e) of the Bail Reform Act, which governs release or detention pending trial, dictates that if, after holding a hearing, the court finds that no "condition or combination of conditions will reasonably assure the appearance of the person as required, and the safety of any other person and the community," such court shall order the detention of the person before trial. The factors to be considered in determining whether to release a defendant pending trial are set forth in 18 U.S.C. § 3142(g) and include: (1) nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001). To obtain an indictment, a grand jury simply must find that a crime had been committed by the defendant by the preponderance of the evidence. Under the Bail Reform Act, the clear and convincing evidence standard applies to a determination that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(e). As such, a simple finding by the preponderance of the evidence that there is a crime is not sufficient. The Bail Reform Act recognizes that when a persons' constitutional right is taken away (in this case – the right to liberty) in the pretrial confinement context, the burden is higher than merely preponderance of the evidence. Accordingly, the court made a false equivalence in
5

analogizing pre-trial detention and the burden under § 922(n). *Bruen* argues that a right as paramount as the right to bear arms cannot be removed by a preponderance of the evidence burden.

As articulated in *Bruen*, the right to bear arms is a right for all persons. Only centuries after the Founding did Congress begin barring indicted individuals from receiving firearms. Congress first passed a law prohibiting transporting firearms for individuals under indictment for a crime of violence in 1938. *See* Federal Firearms Act of 1938, 75 Cong. Ch. 850, § 2(e), 52 Stat. 1250, 1251 (repealed). It was not until 1961 that Congress expanded the prohibition to include all individuals under indictment. *See* Act of Oct. 3, 1961, Pub. L. No. 87–342, 75 Stat. 757 (repealed). The statute was again clarified in 1968, to include indictments in state and federal court, but only for those felonies punishable by more than one year in prison. *See* Gun Control Act of 1968, Pub. L. 90–618, 82 Stat. 1213 (codified at 18 U.S.C. §§ 921–928). Of note, all of these restrictions including the restriction under § 922(n) occurred post-enactment of the Second Amendment.

### C. *There is no well-established historical analogue.*

The government cannot in identify a "well-established and representative historical analogue" from either era supporting the categorical disarmament of tens of millions of Americans who seek to keep firearms in their home for self-defense. *Bruen*, 142 S. Ct. at 2132; *see* Gabriel J. Chin, The New Civil Death: Rethinking Punishment in the Era of Mass Conviction, 160 U. Pa. L. Rev.1789, 1791 (2012) (explaining that "tens of millions" of free-world Americans have criminal records). It is understandable that the government has argued that there is a well-established historical analogue – as it must aruge to uphold all of the post enactment legislation regulating firearms; nevertheless, the standard announced by the Supreme Court in *Bruen* is the law of the land. It must be enforced. Under that standard, the government has failed to meet its burden.

6

The government cannot rely on the passage of § 922(n) in the mid-20th century to establish a long-standing historical tradition back to the enactment of the Second Amendment, particularly where it contradicts the plain language of the Constitution's text. *See Bruen,* 142 S. Ct. at 2136–37. The Supreme Court specifically declined to consider any 20th century evidence offered by the respondents in *Bruen*, noting it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id* at 2154 n.28. The district court should do the same in this case.

Accordingly, the government cannot meet its burden to identify a "relevantly similar" historical tradition of firearm regulation that supports disarming individuals who have been merely indicted. As such, § 922(n)'s restriction on firearms does not meet the *Bruen* test.

## III. CONCLUSION

The government has failed to demonstrate that § 922(g)(3) and § 922(n) are supportable by any historic tradition of firearm regulation in the United States, rendering them unconstitutional under *Bruen* and the Second Amendment. Mr. Alston agrees with the reasoning and conclusion of the Memorandum and Recommendation with regard to § 922(g)(3) and objects to the conclusions at to § 922(n). Mr. Alston continues to argue that this Court should dismiss both counts of the indictment against Mr. Alston.

Respectfully requested this 15th day of August, 2023.

                                                  G. ALAN DUBOIS
                                                  Federal Public Defender

                                                  /s/ Edward D. Gray
                                                  EDWARD D. GRAY
                                                  Assistant Federal Public Defender
                                                  Attorney for Defendant
                                                  Office of the Federal Public Defender
                                                  150 Fayetteville Street, Suite 450
                                                  Raleigh, North Carolina 27601
                                                  Telephone: 919-856-4236
                                                  E-mail: Edward_Gray@fd.org
                                                  N.C. State Bar No. 37539
                                                  LR 57.1 Counsel Appointed

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served upon:

Sarah E Nokes
Assistant United States Attorney
United States Attorney's Office
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

by electronically filing the foregoing with the Clerk of Court on August 15, 2023, using the CM/ECF system which will send notification of such filing to the above.

This the 15th day of August, 2023.

G. ALAN DUBOIS
Federal Public Defender

/s/ Edward D. Gray
EDWARD D. GRAY
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
E-mail: Edward_Gray@fd.org
N.C. State Bar No. 37539
LR 57.1 Counsel Appointed