IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CR-021-FL-1

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | ORDER |
| CARLOS ALSTON, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to dismiss the indictment for failure to state an offense. (DE 17). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II ("the magistrate judge") issued a memorandum and recommendation ("M&R"), wherein it is recommended that the court grant in part and deny in part defendant's motion. The government timely filed objections to the M&R and defendant responded. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge and grants in part and denies in part defendant's motion.

## BACKGROUND

Indictment filed January 4, 2023, charges defendant with one count of willfully receiving a firearm while knowing he was under indictment for a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. §§ 922(n) and 924 and one count of knowingly possessing a firearm while knowing he was an unlawful user of and addicted to a controlled substance in violation of 18 U.S.C. §§ 922(g)(3) and 924. Defendant moved to dismiss the indictment February 28, 2023, on the grounds that 18 U.S.C. §§ 922(n) and 922(g)(3) are

unconstitutional. After obtaining an extension of time, the government responded, and the magistrate judge ordered supplemental briefing. A hearing on the motion was held before the magistrate judge May 31, 2023, and the M&R was issued July 18, 2023. After obtaining extensions of time, both parties filed objections August 15, 2023.

**COURT'S DISCUSSION**

A. Standard of Review

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12. At any time before trial, a defendant can raise a motion asserting "a defect in the indictment or information, including: . . . failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B).

The court may "designate a magistrate judge . . . to submit to a judge of the court proposed findings of fact and recommendations for the disposition [of a motion to dismiss indictment]." 28 U.S.C. § 636(b)(1). Any party may object to the magistrate judge's proposed findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.      Analysis

The M&R recommends that this court find that § 922(n), willfully receiving a firearm while under felony indictment, "passes constitutional muster," but § 922(g)(3), knowingly possessing a firearm while knowingly being a user of and addicted to a controlled substance, does not. Defendant objects to the first recommendation and the government objects to the second. After de novo review of the magistrate judge's opinion, the court overrules both objections and adopts the recommendation in the M&R.

The Second Amendment to the Constitution provides that a "well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Section 922(n) makes it unlawful for "any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to . . . receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce," and § 922(g)(3) forbids the same conduct by anyone "who is an unlawful user of or addicted to any controlled substance." In Bruen, the Supreme Court determined

> the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

New York State Rifle and Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111, 2126 (2022). According to Bruen, some cases are relatively straightforward: "when a challenged regulation addresses a general societal problem that has persisted since the 18th century," the presence of a "similar historical regulation addressing the problem is relevant evidence that the challenged regulation" is consistent with "the understandings of those who ratified" the Constitution. Id. at 2131-32. "Other cases implicating unprecedented societal concerns or dramatic technological

3

changes may require a more nuanced approach." Id. at 2132. "Whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when in engaging in [the required] analogical inquiry." Id. at 2133. Precedent points to at least two metrics: "how and why the regulations burden" Second Amendment rights. Id.

    1.    § 922(n)

Defendant argues that the government's authority to deprive those under felony indictment of their liberty pending trial is not an appropriate historical analogue for modern restrictions on those individuals' receipt of firearms. The court disagrees.

The magistrate judge determined, and defendant agrees, that the plain text of the Second Amendment covers defendant's person and conduct. Defendant objects, however, to the magistrate judge's determination that the historical burdens imposed by laws allowing pretrial detention of indicted defendants are sufficiently analogous to modern-day restrictions on the receipt of firearms in interstate commerce by those individuals.

The case of individuals under felony indictment is one of the "straightforward" instances noted in Bruen, in which the challenged law addresses a societal problem present at the time of the founding. The English Bill of Rights, adopted after "James II was overthrown in the Glorious Revolution," is the ancestor of both the Second and Eighth Amendments. Timbs v. Indiana, 139 S. Ct. 682, 688 (2019); see also District of Columbia v. Heller, 554 U.S. 570, 598 (2008) (explaining the circumstances of the adoption of that document). The Eighth Amendment provides, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," and the analogous clause of the English Bill of Rights provides much the same thing. See Timbs, 139 S. Ct. at 688. Neither provision, however, "has been thought

4

to accord a right to bail in all cases," especially "where the punishment may be death," Carlson v. Landon, 342 U.S. 524, 545 (1952), as was the case with most felony offenses at the time of the founding. See Lange v. California, 141 S. Ct. 2011, 2023 (2021) ("The felony category then was a good deal narrower than now . . . , with the felony label mostly reserved for crimes punishable by death."). The same document thus provides historical support for the individual's right to bear arms and the government's ability to detain that individual, suspending temporarily any right to armament, upon probable cause that the individual has committed a felony. Where § 922(n) restricts the right of those under felony indictment to bear arms to a lesser degree than restrictions present at the founding, the government has carried its burden to show that the provision is consistent with the Nation's historical tradition of firearm regulation.[1]

Defendant argues that indictment and pretrial detention are not sufficiently analogous where different burdens of proof apply to each. Although a defendant may be indicted upon a finding by a grand jury that the defendant committed a crime by the preponderance of the evidence, he may be detained pending trial only upon a determination that clear and convincing evidence shows that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(e). This difference in the burden of proof, however, is a modern distinction not operative at the time of the founding. See Patricia M. Wald & Daniel J. Freed, The Bail Reform Act of 1966: A Practitioner's Primer, AM. BAR ASS'N J., Oct. 1966, at 630-39 (explaining that the law "mark[ed] the first major overhaul of federal bail law since 1789").

---

[1] District courts are divided on whether § 922(n) is consistent with the Second Amendment, and no circuit courts have decided the issue. See, e.g., United States v. Holden, 70 F.4th 1015, 1018 (7th Cir. 2023) (finding it likely that § 922(n) would survive a facial challenge in a case that did not present such challenge squarely); United States v. Kays, 624 F. Supp. 3d 1262, 1268 (W.D. Okla. 2022) (holding that § 922(n) does not violate the Second Amendment where proper historical analogues exist); United States v. Quiroz, 629 F. Supp. 3d 511 (W.D. Tex. 2022) (finding "little evidence that § 922(n) . . . aligns with this Nation's historical tradition).

Accordingly, defendant's argument that § 922(n) is unconstitutional under the Second Amendment is without merit, and defendant's motion in this part is denied.

2.  922(g)(3)

The government objects to the magistrate judge's recommendation that the court dismiss defendant's charge of knowingly possessing a firearm while knowing he was an unlawful user of and addicted to a controlled substance in violation of 922(g)(3), on the grounds that defendant is not a person with Second Amendment rights, that his conduct is not protected by the Second Amendment, and that the provision is consistent with the Nation's traditions of firearms regulation. The court disagrees.

    a.    Whether defendant has Second Amendment rights

The government argues that only law-abiding Americans, from which class unlawful users of controlled substances are excluded, are entitled to keep and bear arms. As explained in the M&R, however, the Supreme Court had no occasion in Bruen to consider whether unlawful drug users possess Second Amendment rights, because it was "undisputed that petitioners . . . [,] two ordinary, law-abiding, adult citizens[, were] part of 'the people' whom the Second Amendment protects." Bruen, 142 S. Ct. at 2134. The Supreme Court has remarked previously that the Constitution's use of the phrase "the people" in "six other provisions" to refer "unambiguously . . . to all members of the political community," creates "a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." Heller, 554 U.S. at 581. Supreme Court precedent therefore suggests strongly that all Americans, including those who confess to regular unlawful drug use, enjoy Second Amendment protection.

In light of these remarks by the Supreme Court, the government's references to decisions by the United States Court of Appeals for the Fourth Circuit assertedly withdrawing Second

Amendment rights from certain classes of people are unconvincing and inapposite. Before Bruen was decided, the Fourth Circuit applied a "streamlined analysis" for challenges to regulations stated in Heller to be "presumptively lawful." Hamilton v. Pallozzi, 848 F.3d 614, 623 (4th Cir. 2017). This analysis "supplant[ed] the historical inquiry with the more direct question of whether the challenger's conduct is within the protected Second Amendment right of 'law-abiding, responsible citizens to use arms in defense of hearth and home.'" Id. at 624 (citing Heller, 554 U.S. at 635). The streamlined inquiry, however, applied to a limited set of regulations, such as bans on possession of firearms by those who entered the country illegally, see United States v. Carpio-Leon, 701 F.3d 974, 981 (4th Cir. 2012), or those with felony convictions. See United States v. Moore, 666 F.3d 313, 320 (4th Cir. 2012). When the constitutionality of 922(g)(3) was presented squarely to the Fourth Circuit, that court declined to adopt the government's view that "dangerous and non-law-abiding citizens are categorically excluded from the historical scope of the Anglo-American right to bear arms . . . , assum[ing] that [the defendant's] circumstances implicate[d] the Second Amendment," and decided the case before it on other issues. United States v. Carter, 669 F.3d 411, 416 (4th Cir. 2012). Where the Supreme Court has suggested strongly that all Americans enjoy some degree of Second Amendment protection, and where the Fourth Circuit has never held users of illicit drugs to be excluded from that protection, the court adopts the magistrate judge's determination that, for purposes of his § 922(g)(3) charge, defendant remains a person who possesses Second Amendment rights.

      b.      Whether defendant's conduct is protected by the Second Amendment

The government argues that the relevant conduct for purposes of constitutional inquiry is "possessing a firearm while being an unlawful drug user," contending that defendant's "conduct in possessing the firearm cannot be divorced from the then-existing condition which made such

possession inherently dangerous." (DE 30 at 6). This argument is directly foreclosed by Bruen, which analyzed separately whether petitioners were "part of 'the people' whom the Second Amendment protects," and "whether the plain text of the Second Amendment protect[ed] petitioner's] proposed course of conduct." 142 S. Ct. at 2134. The government's position conflates the inquiry conducted above with the separate question of whether the statute at issue burdens the right to "keep and bear arms." U.S. Const. amend. II. The court "has little difficulty concluding that" § 922(g)(3), which prohibits the receipt of firearms, burdens conduct within the ambit of the Second Amendment. Id.

   c.  Whether § 922(g)(3) is consistent with historical traditions

Cases implicating societal concerns not present at the founding, such as unlawful drug use, require a nuanced approach. See Bruen, 142 S. Ct. at 2132. While courts "should not uphold every modern law that remotely resembles a historical analogue, because doing so risks endorsing outliers that our ancestors would never have anticipated . . . , analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin." Id. at 2133 (emphasis in original). The government offers three categories of historical analogue, all of which were canvassed thoroughly by the magistrate judge.

The government first points to "English law in existence at the time of (and just after) the founding [which] allowed for some detention of the acutely mentally ill." (DE 30 at 11). But the government provides no evidence that this English practice "was acted on or accepted in the colonies." Bruen, 142 S. Ct. at 2136. In addition, the government's citation to a concurring opinion in Bruen by Justices Kavanaugh and Alito, in which the justices expressed their view that regulations disarming "felons and the mentally ill" are constitutional, is inapposite given that

8

neither § 922(g)(1), which disarms felons, or § 922(g)(4), which disarms the mentally ill, are at issue in this case.

The government argues next that colonial, early American, and Reconstruction-era statutes limiting the use of firearms by intoxicated persons provide a sufficient historical analogue. The government points to laws from colonial Virginia, New York, and Rhode Island that forbade shooting guns at drinking events, in taverns, or on certain holidays. (See DE 30 at 16). None of these laws, however, forbade the possession or acquisition of firearms; they outlawed only the active use of such weapons at sensitive times. The government's reference to nineteenth century laws limiting the intoxicated from using firearms similarly falls short where those laws apply only to actually intoxicated persons, not persons likely so to become.

Finally, the government contends that there is "a tradition of disarmament of individuals and groups which [the] legislature found to be dangerous." (DE 30 at 22); see also Kanter v. Barr, 919 F.3d 437, 464 (7th Cir. 2019) (Barrett, J., dissenting) ("History . . . support[s] the proposition that the state can take the right to bear arms away from a category of people that it deems dangerous[,] . . . mak[ing] that judgment on a class-wide basis."). Colonial Massachusetts and New Hampshire disarmed "those who carried arms in a manner that spread fear or terror," (DE 30 at 22), and other colonies disarmed "entire groups deemed dangerous or untrustworthy, including those who refused to swear allegiance to the colony or the Revolution's cause; enslaved persons; and Native Americans." (Id. at 23) (citing to statutes in Connecticut, Delaware, Massachusetts, New Jersey, New York, North Carolina, Pennsylvania, and Virginia). While these restrictions would not pass constitutional muster today, they do show an understanding present at the founding that certain groups may present a special danger when armed. The "how" of these laws is relatively straightforward: those "disaffected to the cause of America," for example, simply were disarmed.

9

See, e.g., Act of Mar. 14, 1776, ch. VII, 1775-76 Mass. Act 31-32, 35 ("[E]very male person above sixteen years of age . . . who shall neglect or refuse to subscribe a . . . declaration of [loyalty], . . . shall be disarmed and have taken from him in manner hereafter directed, all such arms, ammunities [sic] and warlike implements, as by the strictest search can be found in his possession or belonging to him"); Act of May 5, 777, ch. 3, Va. Stat. 281-82 (directing county officials "to cause . . . recusants to be disarmed"); Act of June 13, 1777, ch. 756 §§ 2, 4, 1777 Pa. Laws 110, 111-13 ("[A]ll male white inhabitants of [Pennsylvania] above the age of eighteen years, shall . . . take and subscribe [an] oath or affirmation . . . and every person above the age aforesaid refusing or neglecting to take and subscribe the said oath or affirmation . . . shall during the time of such neglect or refusal . . . be disarmed." Native Americans' ability to acquire guns was curtailed where colonists were prohibited from selling arms to them. See, e.g., Ch. 58, § 2 (1633), Charters and General Laws of the Colony and Province of Massachusetts Bay 132, 133 (1814) ("And it is ordered, that no person whatsoever, shall . . . . sell, give or barter, directly or indirectly, any gun or guns, powder, bullets, shot, lead, to any Indian whatsoever").[2]

The "why" of these laws, however, do not neatly map onto the purpose of § 922(g)(3): colonial and early American laws preventing dangerous individuals from owning guns reflected a fear that those guns might be used to overthrow the government, whereas § 922(g)(3) simply seeks to promote public safety. See, e.g., Act of Apr. 1, 1778, ch. 796, §§ 1-3, 5, 10 (disarming recusants where "the welfare and happiness of the good people of this commonwealth do, next under God, entirely depend upon the maintaining and supporting the independence and sovereignty of the state"). Although the government is correct that "violence against the state undoubtedly meant

---

[2] The text of these statutes is drawn from the Repository of Historical Gun Laws, an online database maintained by the Center for Firearms Law at Duke University School of Law.

violence against loyal soldiers or innocent civilians," (DE 24), historical laws protecting one interest are not a good analogue for modern laws protecting a byproduct of that interest.[3]

Accordingly, the government has not met its burden of proving that § 922(g) is consistent with the Second Amendment. Thus, defendant's motion in this part is granted, and count two of the indictment is dismissed.

## CONCLUSION

Based on the foregoing, the court ADOPTS the recommendation of the M&R. Defendant's motion to dismiss the indictment (DE 17) is GRANTED IN PART and DENIED IN PART. Count two of the indictment is DISMISSED.

SO ORDERED, this the 24th day of October, 2023.

LOUISE W. FLANAGAN
United States District Judge

---

[3] District courts are divided on the constitutionality of § 922(g)(3), and the Fifth Circuit is the only federal appellate court to decide the issue to date. See, e.g., United States v. Daniels, 77 F.4th 337, 355 (5th Cir. 2023) (finding "the government's theory of danger-based disarmament" unconvincing when advanced in support of the constitutionality of § 922(g)(3)); United States v. Posey, No. 2:22-CR-83, 2023 WL 1869095 at *9, (N.D. Ind. Feb. 9, 2023) (finding that the historical record contains sufficient analogues for § 922(g)(3)); United States v. Harrison, No. CR-22-328, 2023 WL 1771138 at *6 (finding such analogues insufficient).